## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GREGORY GREENE, JR.,** | Civil Action No. 18-16413 (MCA) |
| **Petitioner,** | |
| **v.** | **OPINION** |
| **PATRICK A. NOGAN, et al.,** | |
| **Respondents.** | |

This matter has been opened to the Court by Petitioner Gregory Greene, Jr.'s ("Petitioner," "defendant," or "Gregory") filing of a Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Having reviewed the Petition, Respondent's Answer, and the relevant record, the Court denies the Petition for the reasons stated in this Opinion, and also denies a certificate of appealability ("COA").

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

> Defendants Gregory Greene and his brother Wayne Greene were tried jointly and convicted of various offenses in connection with the November 3, 2007 robbery and homicide of Lazaro Tista.
>
> . . . .
>
> Defendants were charged with purposeful or knowing murder, N.J.S.A. 2C:11–3(a)(1) or (2) (count one); unlawful possession of a weapon, N.J.S.A. 2C:39–5(d) (count two); possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39–4(d) (count three); first-degree robbery, N.J.S.A. 2C:15–1 (count four); felony murder, N.J.S.A. 2C:11–3(a)(3) (count five); and bias intimidation, N.J.S.A. 2C:16–1(a)(3) (count six). Wayne also was charged with second-degree robbery, N.J.S.A. 2C:15–1 (count eight); and witness tampering, N.J.S.A. 2C:28–5 (count nine).[1] Defendants' pre-trial

---

[1] Muhammed Glasper, Willie Greene and Justin Greene also were charged in the indictment. These defendants pled guilty prior to trial. Glasper testified as a witness for the State pursuant to his plea agreement.

motions for severance were denied. They were thereafter tried together before a jury. Count eight was severed during trial.

At the trial, the State presented evidence which established that, on the evening of November 3, 2007, at approximately 11:40 p.m., Tista exited a tavern in Plainfield. The bar's surveillance video showed Tista walking down West Front Street and turning onto Grove Street, in the direction of North Plainfield. At around 11:44 p.m., a vehicle owned by Gregory turned onto West Front Street from Grove Street.

About thirty minutes later, Plainfield police officers Reginald Johnson and Alana Walker, who were in an unmarked car at the intersection of West Front Street and Plainfield Avenue, observed two black men, dressed in dark clothing, running and entering a vehicle that had been idling at the corner. The vehicle then drove away.

Johnson and Walker were suspicious. They followed the vehicle and pulled it over after the driver made a right turn without stopping for a red light. Defendants' brother Willie Greene was the driver. The car was registered to Gregory, who was a passenger. Johnson looked inside the car with a flashlight, but did not see any weapons or anything that looked like blood. After a few minutes, Johnson allowed the car to leave, without issuing a citation.

At around 1:04 a.m., Johnson and Walker were flagged down and directed to the body of a man, who was later identified as Tista. The body was lying face down, about thirty to forty feet from the intersection of West Front and Grove Streets. The body was about one foot from the sidewalk near a bridge leading to North Plainfield, and about one block from Tista's home. The officers summoned medical assistance. Tista was pronounced dead at the scene. Medical testimony indicated that Tista died from blunt force trauma to the head, which could have been caused by any hard, blunt object. The officers did not find a wallet on the body, and the police never recovered one, nor did they find any weapon.

The police were told that Tista had a cellphone, which was later found in possession of S.C., Glasper's nephew.[2] S.C. and Glasper lived together in the same home. S.C. told the police that he found the phone at school. He later said he found the phone in Glasper's garage on November 4, 2007. S.C. did not know to whom the phone belonged or that it had been stolen.

---

[2] The Appellate Division referred to S.C. and others involved in the matter by their initials, in order to protect their privacy.

S.C. believed that it was S.P.'s phone because she sometimes slept in Glasper's garage. According to S.C., S.P. told him she had been out "papi hunting" and that she had hurt someone "real bad." One of the State's witnesses described "papi hunting" as the targeted robbing of persons of Hispanic or Latin American origin, who are believed to be undocumented, when they exit drinking establishments, at which time they are believed to be intoxicated and carrying cash.

During the investigation, the police spoke with F.B.S., who was fourteen years old in November 2007. She had recently run away from a group home with a friend, C.T., through whom she became acquainted with Gregory and Wayne. F.B.S. stated that, on the night of November 3, 2007, she was in a park across the street from Glasper's house, with Glasper, Gregory, two of Gregory's brothers, S.P. and others.

F.B.S. said that, sometime between 11:00 p.m. and 11:30 p.m., Gregory and his brothers left in Gregory's car. F.B.S. and Glasper went into his house. A short time later, Glasper received a phone call and departed in Gregory's car.

During the afternoon of November 4, 2007, F.B.S. went with Glasper and others to a hangout, where she saw Gregory. He told her that, the night before, he hit a man in the back of the head with a metal bat, after which he and two of his brothers went through the man's pockets and took money from his wallet. Gregory said they threw the man's wallet away.

Gregory and his two brothers then pulled the man under a bridge. Gregory told F.B.S. that Glasper had been there, acting as a lookout, and that Willie had been the driver. F.B.S. said the next day, she spent time with Glasper, Gregory and two of his brothers at a park. Gregory repeated what he told F.B.S. the previous day.

The police also spoke with J.O., who lived in Plainfield and hung out with Glasper and the Greenes. Initially, J.O. told the police he believed S.P. and others were involved in the murder. However, J.O. eventually told the police that he and three of Gregory's brothers were present when Glasper and Gregory discussed the crimes. Gregory stated that he hit a Spanish man, took his wallet and threw him over a bridge.

In addition, the police spoke with T.S., who hung out with a group that included Glasper, the Greene brothers, and others. T.S. testified that he was with Glasper and F.B.S. on the night Tista was robbed and killed. Gregory arrived with one of his brothers and spoke with Glasper about "papi hunting." The next day, T.S. was with Glasper, Gregory and others, and Gregory spoke about having gone "papi hunting" the night before.

Gregory said they hit a man in the head with a bat and killed him, then dragged his body under the bridge, and took money from his wallet. Later, Gregory told T.S. that they used a metal bat in the attack. The following day, Gregory told T.S. that his brothers, including Wayne, had been with him when they got the "papi." He said they had thrown the bat into a lake or river. On November 17, 2007, the police charged Glasper, Gregory and Willie.

About ten months later, M.B. spoke with the police. She had been dating Wayne in November 2007. She told the police that Wayne called her at about 6:00 a.m. on November 4, 2007. He was upset. Wayne said he had gone "to work." M.B. believed that meant he had been robbing people. Wayne said "they overdid it." He had been with Glasper, Gregory, Willie and Justin Greene.

Wayne told M.B. that Glasper hit a Hispanic person in the head with a metal bat. He said that Willie remained in the car, and that the others went through the victim's pockets. He stated that they had "stashed" the bat. M.B. testified that she had several conversations with Wayne about the offenses. During those conversations, Wayne asked M.B. several times to say that he was with her that day if he ever was arrested. Wayne told M.B. that, if he was arrested, it would be her "head," because she was the only person who knew about the offenses, and because Wayne's family would never "snitch on him." M.B. was frightened by these threats, for herself and for her father.

M.B. broke up with Wayne in the summer of 2008, and left for Peru. She returned in September 2008, and was told that Wayne had been attempting to contact her. Two days later, she went to the police. Wayne was arrested on September 6, 2008.

Glasper testified that initially he did not tell the police about his participation in Tista's robbery and homicide, but after his arrest, he agreed to waive his rights and tell the police about his involvement in the offenses, as well as the roles that Gregory, Wayne, Willie and Justin played in them.

Glasper stated that on November 3, 2007, Gregory called him and asked if he knew anyone from whom he could buy "weed." Glasper said he did and they left with Wayne, Willie and Justin in Gregory's car. They discussed "papi hunting" and began to look for a Hispanic person to rob. Glasper said that most of these individuals are immigrants, who are often drunk and do not report the crimes.

At some point, Gregory identified a victim and gave Willie, who was driving the car, directions on where to go. Willie parked the car and Gregory got out to see if the victim was still walking down the street. Gregory returned and said the victim was coming. Wayne told him to go back and be sure. Glasper took a bat out of the trunk.

Glasper participated in the robbery and killing of Tista, with Gregory, Wayne and Justin, while Willie remained in the car.

They discussed who would hit the victim with the bat. Glasper thought the bat would be used to hit the victim in the leg, to stop him from running. According to Glasper, the victim saw them and began to walk in a different direction. Gregory grabbed the bat out of Glasper's hand and said he would "do it" himself. According to Glasper, Gregory ran up to the victim and hit him in the head with the bat.

The others ran to the victim. Glasper took the bat and was told to be the lookout, while Gregory, Justin, and Wayne pulled the victim near the bridge and went through his pockets. After they took the victim's wallet, they returned to the car and divided the money. They stopped at the home of one of Gregory's relatives. On the way, police pulled them over, but let them go without issuing a summons. They stopped to buy "weed" and gas, and then traveled to Glasper's home. According to Glasper, the Greene brothers were in a celebratory mood, without any sympathy or remorse.

Neither defendant testified at trial.

Gregory and Wayne were convicted of aggravated manslaughter, as a lesser-included offense of murder (count one), unlawful possession of a weapon (count two), possession of a weapon for an unlawful purpose (count three), first-degree robbery (count four), and felony murder (count five). They were found not guilty of bias intimidation (count six). Wayne was also was found guilty of witness tampering (count nine). Defendants were sentenced on October 28, 2011. These appeals followed.

*State v. Greene*, Nos. A-3374-11T2, A-3387-11T22014 WL 5470502, at *1–4 (N.J. Super. App.

Div. Oct. 30, 2014).

On direct appeal, among other points, Petitioner argued that the trial court erred by admitting testimony from a witness, M.B., that a Wayne made statements to M.B. implicating defendant in Tista's robbery and homicide, that he was prejudiced by the trial court's failure to sever the bias intimidation charge, that the felony murder charge was erroneous, and that the trial court's dismissal of a juror was an abuse of discretion. *See id.* at *4-7. The Appellate Division affirmed Gregory's convictions and the sentence imposed but remanded for entry of a corrected judgment of conviction deleting the erroneous statement on page three that Gregory's conviction

was the result of a negotiated plea. *See id.* at *9.     Defendant's petition for certification was

thereafter denied by the Supreme Court. *State v. Greene*, 221 N.J. 285 (2015).

Defendant filed a petition for PCR. *See State v. Greene*, 2018 WL 1074340, at *1 (N.J.

Super. App. Div. Feb. 28, 2018).  The PCR court denied defendant's petition by order dated March

21, 2016. *See id.*  Petitioner appealed and asserted as his sole ground for relief that he was provided

ineffective assistance of counsel in his PCR proceeding.  The Appellate Division affirmed the

denial of Petitioner's PCR claims and likewise rejected his claims of ineffective assistance of PCR

counsel. *See Greene*, 2018 WL 1074340 at *2-4.  The Supreme Court denied certification on

September 24, 2018. *State v. Greene*, 235 N.J. 121 (2018).

Petitioner submitted the instant habeas petition on November 16, 2018, and submitted an

Amended Petition on February 28, 2019. *See* ECF No. 1, Petition at 17; ECF No. 4, Amended

Petition at 17.  Respondents filed their Answer on July 9, 2019, and Petitioner did not submit a

traverse.

## II.     STANDARD OF REVIEW

Section 2254(a) permits a court to entertain only claims alleging that a person is in state

custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

2254(a). Petitioner has the burden of establishing each claim in the petition. *See Eley v. Erickson*,

712 F.3d 837, 846 (3d Cir. 2013). Under 28 U.S.C. § 2254, as amended by the Antiterrorism and

Effective Death Penalty Act ("AEDPA") of 1996, Pub. L. No. 104-132, tit. I, § 101 (1996), 28

U.S.C. § 2244, federal courts in habeas corpus cases must give considerable deference to

determinations of state trial and appellate courts. *See Renico v. Lett*, 599 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus:

> (d) An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be

> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law,
>> as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented
>> in the State court proceeding.

28 U.S.C. § 2254(d).

Where a state court adjudicated a petitioner's federal claim on the merits,[3] a federal court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 567 U.S. 37, 40-41 (2012) (quoting 28 U.S.C. § 2254(d)).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," at of the time of the relevant state-court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams*, 529 U.S. at 405-06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the

---

[3] "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that (1) finally resolves the claim, and (2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." *Shotts v. Wetzel*, 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. As to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Miller–El v. Dretke*, 545 U.S. 231, 240 (2005). Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A petition for a writ of habeas corpus "shall not be granted unless ... the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1); *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 227 (3d Cir. 2017). This Court may, however, deny petitioner's unexhausted claim on the merits. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

III.   **ANALYSIS**

   a. **Ground One—Admission of Co-conspirator's Statements**

   In Ground One, petitioner argues that he was deprived of a fair trial when the trial court admitted inculpatory co- conspirator statements made by co-defendant Wayne Greene. Petitioner contends that these statements did not satisfy the criteria for a co-conspirator exception, and violated his right to confrontation under the Sixth Amendment.

   Petitioner raised this argument on direct appeal and the Appellate Division rejected it as follows:

> Gregory contends that the trial court erred by admitting testimony from M.B. that Wayne made statements to her implicating Gregory in Tista's robbery and homicide. Gregory contends that the admission of Wayne's statements violated his right to confrontation under the Sixth Amendment to the United States Constitution, and that his convictions must be reversed as a result. We disagree.

> N.J.R.E. 803(b)(5) is an exception to the rule precluding the admission of hearsay. The rule permits a statement to be offered against a party if the "statement [was] made at the time the party and the declarant were participating in a plan to commit a crime or civil wrong and the statement was made in furtherance of that plan." *Ibid.* The rule allows the admission of statements among co-conspirators provided the statements are made "'at the time'" and "'in furtherance of'" the conspiracy. *State v. Savage*, 172 N.J. 374, 402, 799 A.2d 477 (2002) (quoting N.J.R.E. 803(b)(5)).

> Moreover, the co-conspirator exception "does not offend the Sixth Amendment's guarantee of a defendant's right to confront the witnesses against him." *Ibid.* (citing *Bourjaily v. United States*, 483 U.S. 171, 183–84, 107 S. Ct. 2775, 2783, 97 L. Ed.2d 144, 157–58 (1987); *State v. Boiardo*, 111 N.J. Super. 219, 229, 268 A.2d 55 (App. Div.), certif. denied, 57 N.J. 130 (1970), cert. denied, 401 U.S. 948, 91 S. Ct. 931, 28 L. Ed.2d 231 (1971)).

>> To qualify for admissibility under the rule, the State must meet the following conditions: (1) the statement must have been made in furtherance of the conspiracy; (2) the statement must have been made during the course of the conspiracy; and (3) there must be "evidence, independent of the hearsay, of the

existence of the conspiracy and defendant's relationship to it."

[*Ibid.* (quoting *State v. Phelps*, 96 N.J. 500, 509–10, 476 A.2d 1199 (1984)).]

It should be noted that "[a] conspiracy continues until its objective is fulfilled." *Id.* at 403 (citing *State v. Cherry*, 289 N.J. Super. 503, 523, 674 A.2d 589 (App. Div. 1995)). "If a statement is made after the conspiratorial objective is completed, it is generally not admissible under the co-conspirator exception." *Ibid.* (citing *State v. Sparano*, 249 N.J. Super. 411, 420–21, 592 A.2d 608 (App. Div.1991)). "[A] conspiracy may continue beyond the actual commission of the object of the conspiracy if it is shown that a conspirator enlisted false alibi witnesses, concealed weapons, or fled in order to avoid apprehension." *Ibid.* (citing *Cherry*, supra, 289 N.J. Super. at 523–24, 674 A.2d 589).

Moreover, statements relating to past events may be admissible [under N.J.R.E. 803(b)(5) ] if they are "in furtherance" of the conspiracy and "serve some current purpose, such as to [provide] cohesiveness, provide reassurance[s] to a co-conspirator, or prompt one not a member of the conspiracy to respond in a way that furthers the goals of the conspiracy."

[*Ibid*. (quoting *State v. Taccetta*, 301 N.J. Super. 227, 253, 693 A.2d 1229 (App. Div.1997)) (alteration in original).]

In deciding defendants' pre-trial severance motion, the trial court reviewed M.B.'s videotaped statement to the police and determined that Wayne's statements to M.B., which implicated Gregory, were made in the course of and in furtherance of a conspiracy because they were made in the context of Wayne asking M.B. to provide him with an alibi. The record supports the court's determination.

M.B. indicated that she had discussed the crimes with Wayne on a couple of occasions, and that he had asked her several times to provide him with an alibi. The trial court found that the statements Wayne made to M.B. about the offenses, and Gregory's participation in them, were part of his effort to have her provide him with an alibi. The record supports that finding. Indeed, Wayne's requests for an alibi would have made no sense if he had not first told M.B. about the crimes.

Even if the trial court erred by admitting Wayne's statements to M.B. implicating Gregory in the crimes, the error does not warrant reversal of defendant's convictions. A violation of a defendant's right to confrontation is subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L. Ed.2d 674, 686 (1986). To establish that the error was harmless, the State

> must show "'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Id.* at 680, 106 S.Ct. at 1436, 89 L. Ed.2d at 684 (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L. Ed.2d 705, 710 (1967)).
>
> We are convinced that if the admission of Wayne's out-of court statements implicating Gregory was erroneous, the error was harmless under this standard. As we have explained, the evidence of Gregory's guilt was overwhelming. That evidence includes Gregory's many statements admitting his involvement in the offenses, as well as the testimony of Glasper.
>
> Therefore, it is beyond a reasonable doubt that the admission of Wayne's statements to M.B. implicating Gregory did not contribute to the verdict. Clearly, there was sufficient evidence to find Gregory guilty even if Wayne's statements to M.B. implicating him in the offenses had not been admitted into evidence.

*Greene*, 2014 WL 5470502, at *4–6.

Petitioner asserts that the admission of Wayne's statements violated his Sixth Amendment rights under the Supreme Court's decision in *Bruton v. United States*, 391 U.S. 123, (1968). The Sixth Amendment to the United States Constitution, and specifically its Confrontation Clause, guarantees criminal defendants the right to confront the witnesses against them. In *Bruton*, the Supreme Court explained that a defendant is denied his right to confront witnesses against him when a prosecutor presents a co-defendant's confession implicating the defendant at a joint trial, and the co-defendant does not testify. 391 U.S. at 126. Subsequent to *Bruton*, however, the Supreme Court held that admission of a non-testifying co-conspirator's statement against a defendant does not offend the Confrontation Clause as long as the statement satisfies the co-conspirator exclusion under the relevant rules of evidence. *See Bourjaily v. United States*, 483 U.S. 171, 182–83 (1987).

Here the statements at issue were admitted under the co-conspirator exception under N.J.R.E. 803(b)(5), which permits the admission against a party of "a statement made at the time the party and the declarant were participating in a plan to commit a crime or civil wrong and the

statement was made in furtherance of that plan." To meet that exception, three conditions must be satisfied: 1) the statement must have been in furtherance of the conspiracy; 2) the statement must have been made during the course of the conspiracy; and 3) there must be evidence, aside from the hearsay, of the existence of the conspiracy and defendant's role in it. *State v. Phelps*, 96 N.J. 500, 509–10, 476 A.2d 1199 (1984). The evidence of the conspiracy may be direct or circumstantial and can take the form of hearsay, but it must be "substantial enough to engender a strong belief in the existence of the conspiracy and of defendant's participation." *Id.* at 511.

Relying on *State v. Savage*, 172 N.J. 374, 403 (2002), the Appellate Division affirmed the trial court's determination that Wayne's statements implicating Petitioner were made in further of the conspiracy because Wayne enlisted M.B. as a false alibi witness. This Court finds no basis to disturb the Appellate Division's conclusion that the Wayne's statements implicating Petitioner were properly admitted under N.J.R.E. 803(b)(5).

Moreover, the United States Supreme Court has held that a violation of a defendant's right to confrontation is subject to the harmless error analysis, and in order to show that an error was harmless, the State must show "'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 684 (1986) (internal citation omitted). These factors the reviewing court must consider "include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.* at 684. Here, the Appellate Division concluded that if the trial court erroneously admitted Wayne Greene's statements to M.B., the error was harmless beyond a reasonable doubt, as there was overwhelming evidence of petitioner's guilt,

including Petitioner's own statements and the testimony of Glasper.  The Court agrees that the evidence against Petitioner was overwhelming and rendered any erroneous admission of M.B. testimony about Wayne's statements implicating Petitioner harmless beyond a reasonable doubt.

Because the Appellate Division did not violate clearly established federal law in resolving Petitioner's Confrontation Clause claim, the Court denies relief on Ground One.

### b.  Ground Two—Failure to Sever Bias Intimidation Charge

In Ground Two, petitioner contends that he was deprived of a fair trial based on the trial court's failure to sua sponte sever the bias intimidation charge.  Petitioner argued that the result was a trial that included "improperly-admitted evidence of prior bad acts." ECF No. 1-1 at 15. Specifically, petitioner argues that he was prejudiced at trial by the references to "papi hunting." The Appellate Division rejected this claim as follows:

> Gregory argues that the trial court erred by failing to sever the bias intimidation charge. This issue was not raised below. Therefore, we must consider whether the court's failure to sever the charge for trial was erroneous and, if so, whether it constituted plain error, which is an error "clearly capable of producing an unjust result." R. 2:10–2.
>
> Rule 3:15–2(b) provides that the court may order separate trials if "it appears that a defendant or the State is prejudiced by a permissible or mandatory joinder of offenses." In determining if joinder is prejudicial to a defendant, the court considers whether, if the crimes were tried separately, evidence of the severed offenses " 'would be admissible under [N.J.R.E. 404(b) ] in the trial of the remaining charges.'" *State v. Chenique–Puey*, 145 N.J. 334, 341, 678 A.2d 694 (1996) (quoting *State v. Pitts*, 116 N.J. 580, 601–02, 562 A.2d 1320 (1989)) (alteration in original); *see also State v. Oliver*, 133 N.J. 141, 150–51, 627 A.2d 144 (1993).
>
> Gregory argues that he was prejudiced by the references at trial to "papi hunting." He contends that the State would not have been allowed to introduce evidence concerning this practice under N.J.R.E. 404(b) if the bias intimidation charge had been severed. He argues that there was no evidence that he engaged in "papi hunting" other than that which was alleged in this case. He further argues that this evidence could not have been admitted to show motive or intent, because the only motive in this case was robbery. We are not persuaded by these arguments.

> The State did not introduce evidence in this case that Gregory or Wayne engaged in acts of "papi hunting" other than in the incident involving Tista. Furthermore, some explanation of this practice of "papi hunting" was required because Gregory had used that term to describe what he was planning to do on the night Tista was robbed and slain. Thus, evidence regarding "papi hunting" would have been admitted even if the bias intimidation charge had been severed.
>
> In addition, there is no indication on this record that Gregory was prejudiced because the bias intimidation charge was tried along with the other charges. As we stated previously, there was overwhelming evidence of Gregory's guilt, wholly aside from any testimony concerning "papi hunting." Furthermore, the jury found defendants not guilty of bias intimidation, thereby indicating that the evidence regarding "papi hunting" probably did not play a significant role in its decisions finding defendants guilty of the other offenses.

*Greene*, 2014 WL 5470502, at *6–7.

Here, the Appellate Division's ruling was based solely on state law and state rules of evidence. Generally, matters of state procedural law are not reviewable in a federal habeas petition. The Supreme Court has stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). This is generally true even where the state court incorrectly applied state law. *Id.* at 71. Rather, a federal habeas claim will lie only where a state court determination violated some federally protected right. *Id.* at 68. The Third Circuit likewise stated:

> Our review of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights. We can take no cognizance of non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule, even if that rule is intended as a guide to implement a federal constitutional guarantee.

*Wells v. Petsock*, 941 F.2d 253, 256 (3d Cir.1991), cert. denied, 505 U.S. 1223 (1992); *see also Smith v. Zimmerman*, 768 F.2d 69, 73 (3d Cir. 1985) ("a 'mere error of state law' is not a denial of due process").

In his Memorandum of Law, Petitioner now argues that denial of the motion to sever and admission of the testimony about "papi hunting" violated his clearly established federal rights. The Court has reviewed Petitioner's direct appeal brief and it appears that this issue was raised solely as a matter of state law.  *See* Exhibit 9-1, Petitioners Direct Appeal Brief, dated June 28, 2013.  To "fairly present" a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.  *See Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277-78, (1971).  Nevertheless, to the extent this issue is unexhausted, this court may deny an unexhausted claim on the merits.

Petitioner contends that the admission of the evidence of "papi hunting" and the joinder of the bias intimidation charge violated his clearly established federal rights.  To show that an error by state court in the admission of evidence rose to the level of a due process violation, habeas petitioner must show that it was of such magnitude as to undermine the fundamental fairness of the entire trial.  *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001).  The Supreme Court has observed that "[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986). The Supreme Court explained in *Zafiro v. United States*, 506 U.S. 532 (1993), that "an important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence [but] a fair trial does not include the right to exclude relevant and competent evidence." *Id.* at 540 (citation and internal quotation marks omitted).

Here, this Court finds that the state court's admission of the evidence of "papi hunting" and the failure to sever the bias intimidation charge not did not "result[ ] in prejudice so great as

to deny a defendant his Fifth Amendment right to a fair trial" *Lane*, 474 U.S. at 446.  Nor was the

Appellate Division's resolution of these issues contrary to, or an unreasonable application of

Supreme Court precedent.  As explained by the Appellate Division, Petitioner has not shown that

he was prejudiced by the admission of the references to "papi hunting" given that he was acquitted

of the bias intimidation charges.  For these reasons, the Court denies relief on Ground Two.

### c.  Ground Three—Error in Jury Instructions

Petitioner next argues that the trial court erred in instructing the jury that Petitioner could

be convicted of felony murder based on being a mere coconspirator.  During the charge conference

in this case, defense counsel requested that the jury instruction be modified to focus the jury on

the crimes charged, rather than on a conspiracy, for which the defendants were not charged.  *See*

20T13-5 to 15-10.  The judge suggested changing the instruction to read when a person "engages

in a conspiracy to commit a crime." 20T15-11 to 13 (Emphasis added.)    Defense    counsel

agreed with this change, stating that it was "much better."    20T15-14 to 17.  Pursuant to the

agreed-upon change, the judge instructed the jurors:

> Our law provides that a person is guilty of an offense if it is
> personally committed by his own conduct, the conduct of another
> person for which he is legally accountable, or both.
>
> A person is legally accountable for the conduct of another person,
> including any crimes committed by such other person, when he is
> engaged in a conspiracy with the other person and the conduct is in
> further [sic] of and within the scope of the conspiracy.

[22T109-13 to 21].  The court also instructed the jury on accomplice liability. (22T109-21 to 110-

6).

In New Jersey, to be found guilty of felony murder, a defendant must "engaged in the

commission of, or an attempt to commit, or flight after committing or attempting to commit

robbery, sexual assault, arson, burglary, kidnapping, carjacking, criminal escape or terrorism ...."

N.J.S.A. 2C:11-3(a)(3).  Contrary to Petitioner's argument, he was not charged with conspiracy to

commit robbery; rather, he was charged with, and found guilty of, the predicate offense of robbery.

While conspiracy to commit robbery, in violation of N.J.S.A. 2C:5-2, is not a predicate offense for

felony murder, robbery, in violation of N.J.S.A. 2C:15-1, clearly is.

The Appellate Division summarized and rejected petitioner's jury instruction argument as

follows:

> Gregory contends that his felony murder conviction must be reversed because the court's instructions permitted the jury to find him guilty of robbery as a co-conspirator. Gregory contends that conspiracy to commit robbery is not a predicate offense to felony murder. In support of this argument, Gregory relies upon *State v. Grey*, 147 N.J. 4, 14–17, 685 A.2d 923 (1996). This contention was not raised at trial. We therefore review the argument under the plain error standard. R. 2:10–2.

>> [Felony murder] is committed when the actor, acting either alone or with one or more other persons, is engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery, sexual assault, arson, burglary, kidnapping, carjacking, criminal escape or terrorism pursuant to [N.J.S.A. 2C:38–2], and in the course of such crime or of immediate flight therefrom, any person causes the death of a person other than one of the participants.

> [N.J.S.A. 2C:11–3(a)(3).]

> To be found guilty of felony murder, a defendant must be found guilty of a predicate offense. *Grey*, supra, 144 N.J. at 15–17, 675 A.2d 611. In *Grey*, the jury acquitted the defendant of the predicate crime of aggravated arson, for which he had been charged as a principal and an accomplice, and found him guilty only of conspiracy to commit arson. *Id.* at 16, 685 A.2d 923. The Supreme Court held that the defendant's conviction for felony murder could not stand, because "the substantive crime of conspiracy is not a predicate offense for felony murder." *Id.* at 15, 685 A.2d 923.

> In this case, however, defendants were not charged with conspiracy to commit robbery. Defendants were charged with and were found guilty of the predicate offense of robbery. Thus, Gregory's reliance upon *Grey* is misplaced. *See* Cannel, New Jersey Criminal Code Annotated, comment 6 on N.J.S.A. 2C:2–6 (2013) (noting that liability for substantive crimes committed by co-conspirators must be distinguished from conspiracy to commit those same offenses).

*Greene*, 2014 WL 5470502, at *7.

From the outset, the Supreme Court has made clear that "the fact that [a jury] instruction was allegedly incorrect under state law is not a basis for habeas relief." *Duncan v. Morton*, 256 F.3d 189, 203 (3d Cir. 2001) (quoting *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991) ). For an incorrect jury instruction to warrant habeas relief, the instruction must have "by itself so infected the entire trial [such] that the resulting conviction violates due process." *Id.* (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) ). It is not enough that the instruction is merely "undesirable, erroneous, or even universally condemned." *Id.* To determine the effect of an allegedly erroneous jury instruction on the validity of a petitioner's conviction, courts cannot judge the instruction "in artificial isolation," but must consider it "in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973).

Here, as noted by the Appellate Division, Petitioner was convicted of robbery and was neither charged with nor convicted of conspiracy to commit robbery. For felony murder, the jury finding of guilt must be for the felony itself based on a charge of liability, such as co-conspirator liability or accomplice liability; a jury finding of guilt for conspiracy to commit that felony does not suffice. *See Grey*, 147 N.J. at 15-18. Petitioner's case is plainly distinguishable from the situation in *Grey*, where the defendant <u>was acquitted of the predicate crime of aggravated arson</u> and only convicted of conspiracy to commit that crime. Petitioner was convicted of both the predicate crime of robbery and felony murder. Moreover, the Appellate Division explained that there is a distinction under New Jersey law between liability for substantive crimes committed by co-conspirators and conspiracy to commit those same offenses. As such, there is no merit to Petitioner's claim that he was convicted of felony murder based on the predicate offense of

conspiracy rather than based on the predicate offense of robbery.  The Court therefore denies relief on Ground Three.

### d.   Ground Four—Dismissal of a Juror before Deliberations

Finally, Petitioner asserts that he suffered prejudice after the trial judge dismissed a juror, prior to the commencement of deliberations, who had been arrested for an unpaid traffic ticket on her way to court.  The Appellate Division summarized and rejected this claim as follows:

> Gregory further argues that the trial court erred by granting the State's motion to dismiss a juror after summations, but before the jury was charged and began its deliberations. The juror had been arrested for a motor vehicle violation on her way to court. Gregory claims that the court abused its discretion by dismissing the juror because there was no "concrete reason" to believe that the juror could not deliberate fairly. We disagree.

> Judges have a duty to preserve the impartiality of the jury throughout the trial court proceedings. *State v. Tyler*, 176 N .J. 171, 181, 821 A.2d 1139 (2003). The standard for dismissing a juror during trial before deliberations have begun, is "for good cause shown." Rule 1:8–2(d)(1). A reviewing court may not disturb a trial court's decision to remove a juror "absent a clear showing that the trial court abused its discretion." *State v. Mance*, 300 N.J.Super. 37, 55, 691 A.2d 1369 (App.Div.1997) (citing *State v. LaBrutto*, 114 N.J. 187, 207, 553 A.2d 335 (1989)).

> In this case, the court questioned the juror and she stated that her arrest and the experience with the police would not affect her ability to be fair and impartial. However, the court had legitimate concerns about the juror's ability to do so, based upon her demeanor when she discussed her arrest, which had just occurred. In addition, the juror had referred to the police in a derogatory manner, as reported by another juror who the court deemed credible. The record therefore supports the court's determination that there was good cause to dismiss the juror.

> In support of his argument, Gregory relies upon *State v. Adams*, 320 N.J. Super. 360, 368–69, 727 A.2d 468 (App. Div.), certif. denied, 161 N.J. 333, 736 A.2d 526 (1999), but that case involved the discharge of a juror during deliberations. Here, the juror was dismissed before deliberations. The attorneys had completed their summations, and the next step in the trial was the jury charge. We are convinced that, under the circumstances, the court did not abuse its discretion by dismissing the juror.

*Greene*, 2014 WL 5470502, at *8.

On direct appeal, Petitioner raised this claim as a violation of his Sixth Amendment right to an impartial jury and as a violation of state law and procedures governing the dismissal of jurors before deliberations. *See* ECF No. 1-1 at 50-60. The Sixth Amendment guarantees "an impartial jury" which "consists of nothing more than jurors who will conscientiously apply the law and find the facts*." United States v. Jones*, 566 F.3d 353, 358 (3d Cir. 2009) (quoting *Lockhart v. McCree*, 476 U.S. 162, 178 (1986)) (emphasis and internal quotation marks omitted); *see also Rivera v. Illinois*, 556 U.S. 148, 157 (2009) (explaining that a defendant must be tried "before a qualified jury composed of individuals not challengeable for cause").

Petitioner has not established that the removal of the juror before deliberations violated his federal right to an impartial jury. Here, the juror was dismissed after the trial court trial questioned the juror and determined that she could <u>not</u> be impartial following her arrest based on her demeanor and her statements about police, which were reported by another juror. The factual findings of the trial court are presumed correct on habeas review, and the Petitioner has not provided any clear and convincing evidence to overcome this presumption. Moreover, the Appellate Division did not unreasonably determine the facts or unreasonably apply any clearly established Supreme Court precedent in deciding this issue. As such, the Court denies relief on Ground Four.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit, at the time a final order denying a habeas petition is issued, the district judge is required to make a determination as to whether a certificate of appealability ("COA") should issue. Having denied the claims in the Petition, the Court will also deny a COA. Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding unless he

has "made a substantial showing of the denial of a constitutional right." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Miller-El v. Cockrell*, 537 U.S. 322 (2003).  Because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court will deny a COA.

## V.    **CONCLUSION**

For the reasons explained in this Opinion, the Court denies the Petition and denies a COA. An appropriate Order follows.

_____
Hon. Madeline Cox Arleo
United States District Judge